IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

TIMOTHY R. RANGEL,

                Plaintiff,

vs.                                            Case No. 10-4003-SAC

HALLMARK CARDS, INC.,

                Defendant.

MEMORANDUM AND ORDER

This case, in which the plaintiff asserts a workers' compensation retaliation claim, comes before the court on the defendant's motion to compel arbitration and stay the action pending arbitration. The issue before the court is whether the parties entered into a binding and valid arbitration agreement. Plaintiff asserts solely that the defendant's Amended Dispute Resolution Program (DRP) is not supported by any consideration because he never accepted and/or acquiesced in defendant's DRP, and was not told that he could not continue in his employment with defendant unless he accepted and/or acquiesced in the DRP.

**Facts**

Pursuant to D.Kan. Rule 56.1(a), "All material facts set forth in the statement of the movant shall be deemed admitted for the purpose of summary judgment unless specifically controverted by the statement of the opposing party." The defendant's statement of facts, set forth below and supported by the record, has not been controverted by the plaintiff, thus the court deems the facts to be admitted for purposes of this motion.

Hallmark hired plaintiff on or about January 30, 1984. In February of 2009, plaintiff suffered a work-related injury that ultimately resulted in his being placed on long-term disability ("LTD") leave. Plaintiff's opportunity to find and accept another position with Hallmark expired on or about February 10, 2010.

In January of 2002, Hallmark adopted a Dispute Resolution Program ("Original DRP"). Plaintiff received the Original DRP plan, a brochure with DRP highlights, and a summary of how the DRP works. These three documents were mailed to the plaintiff at his home address as enclosures to a December 28, 2001 letter from Ralph Christensen, Senior Vice President-Human Resources. The letter and its enclosures were not returned as undeliverable, and the plaintiff does not contest the fact that he received them.

The Original DRP stated in bold, on its cover page:

> **By continuing or accepting an offer of employment, all employees to whom this policy is applicable agree as a condition of employment to submit all covered claims to the Hallmark DRP and to accept an arbitrator's (or arbitrators') award as the final, binding, and exclusive determination of all covered claims.**

Dk. 5, Exh. 2, p. 1.

The brochure with program highlights which the plaintiff received with Mr. Christensen's letter made a similar statement at the top of a page explaining the four-step DRP process, stating:

> After the effective date, employees must use the DRP to resolve workplace disputes. By accepting an offer of employment or by continuing employment with Hallmark or its subsidiaries on or after the effective date of the DRP, new and current employees agree, as a condition of employment, that all covered claims are subject to the DRP.

Dk. 5, Exh. 3, p. 3.

The summary of the DRP which the plaintiff received with Mr.Christensen's letter made a similar statement, bolded at the bottom of the page:

> **After the effective date, employees must use the Dispute Resolution Program to resolve workplace disputes. By accepting an offer of employment or by continuing employment with Hallmark or its subsidiaries on or after the effective date of the DRP, new and current employees agree, as a condition of employment, that all covered claims are subject to the DRP and to accept an arbitrator's (or arbitrators') award as the final, binding, and exclusive determination of all covered claims**.

Dk. 5, Exh. 3, p. 6.

In August, 2003, Hallmark amended the DRP ("Amended DRP") to clarify, among other things, that Hallmark was equally bound to submit "covered claims" to final, binding arbitration and that any right to modify or discontinue the DRP was prospective only.[1] *See* Exh. 4 at 2, 4. ((Covered Claims). No significant change was made in the provisions relating to the effect of continued employment. Plaintiff continued his employment with the defendant for eight years after adoption of the Original DRP and for six years after adoption of the Amended DRP.

The Amended DRP contained language identical to the Original DRP regarding the effect of continued employment. Its first page stated:

> By continuing or accepting an offer of employment, all employees to whom this policy is applicable agree as a condition of employment to submit all covered claims to the Hallmark DRP and to accept an arbitrator's (or arbitrators') award as the final, binding, and exclusive determination of all covered claims.

---

[1] *See Morrow v. Hallmark Cards, Inc.*, No. WD 67440, 2008 WL 2582662, at *1 (Mo.App. W.D. June 30, 2008) (holding a former employee had no contractual duty to arbitrate her claims under the Original DRP because that agreement was not mutual since Hallmark reserved the right, in its sole discretion, to modify or revoke the provisions of the program).

3

Dk. 5, Exh. 4, p. 1. The Amended DRP, in explaining the effect of the arbitrator's decision, nearly repeats the above provision by stating:

> By accepting an offer of employment or by continuing employment with the Company on or after the effective date of this procedure, new and current employees agree, as a condition of employment, that all covered claims are subject to the DRP process and that an arbitrator's award shall be a final, binding and exclusive determination of their covered claims subject only to limited rights of appeal provided herein or by statute.

Dk. 5, Exh. 4, p. 14.

Defendant did not mail copies of the Amended DRP to its employees, but notified them of its existence by a letter from David E. Hall, then the Senior Vice-President-Human Resources. Plaintiff received that letter with his July 18, 2003 bi-weekly direct deposit slip. The letter concludes:

> I encourage you to read the revised DRP policy, which will apply to all DRP Level 2 claims received after August 1, 2003. You may obtain a copy of the policy from the "Programs and Services" section of Hallmark's Express Net intranet site or by contacting your manager of the Human Resources of Employee Relations Specialist who works with your division.

Dk. 5, Exh. 5, p. 1.

Hallmark additionally included some information about changes to its DRP policy in two of its *Noon News* publications, a daily publication available to all Hallmark employees, but did not include therein any statements about the effect of continued employment. *See* Dk. 5, Exh. 6, pp. 3, 5.

Hallmark's Career Rewards booklet, which "is provided to all Hallmark employees," Dk. 5, Exh. 1 (Lloyd affidavit), includes the following language:

> All employees must use the DRP to resolve workplace disputes. By continuing or accepting an offer of employment, new and current employees agree, as a

condition of employment, that all covered claims are subject to the DRP and to accept an arbitrator's (or arbitrators') award as the final, binding, and exclusive determination of all covered claims.

Dk. 5, Exh. 7, p. 4.

Similarly, defendant's policies published on its intranet and available to all employees, include a section on its dispute resolution program. Policy 604 includes language about the effect of continued employment, stating:

Employees must use the DRP to resolve workplace disputes. By accepting an offer of employment or by continuing employment with Hallmark or its subsidiaries on or after the effective date of the DRP, new and current employees agree, as a condition of employment, that all covered claims are subject to the DRP.

Dk. 5, Exh. 8, p. 2.

Defendant agrees that because Plaintiff's claims of retaliation originated after the effective date of the Amended DRP, the Amended DRP rather than the Original DRP is potentially applicable. Under the Amended DRP, "covered claims" include "claims arising out of the employee's employment that the Company may have against the employee or that the employee may have against the Company and/or individual employees acting within the scope of their employment," including but not limited to "Retaliation claims for a legally protected activity" and "Claims of violation of public policy." *See* Ex. 4 at 4 (Covered Claims). Plaintiff does not dispute that the claims he brings in this lawsuit, removed to federal court on January 10, 2010, are "covered claims" if the Amended DRP is deemed to be an enforceable contract.

**Arbitrability standard**

Under the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 et seq. , "[a] written provision in any ... contract evidencing a transaction involving commerce to settle by

5

arbitration a controversy thereafter arising out of such contract or transaction ... shall be valid, irrevocable, and enforceable...." 9 U. S .C. § 2. Section 3 of the FAA permits the Court to stay litigation in favor of arbitration. Federal policy favors arbitration agreements and requires that the Court rigorously enforce them. *Shearson/Am. Exp., Inc. v. McMahon*, 482 U.S. 220, 226 (1987) (citing *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 221 (1985)). Arbitration is a matter of contract between the parties in which courts have a limited role. *Shell Oil v. CO2 Committee, Inc.*, __ F.3d __ (10th Cir. Dec. 21, 2009). On a motion to compel arbitration under the FAA, the Court generally applies a strong presumption in favor of arbitration, *ARW Exploration Corp. v. Aguirre*, 45 F.3d 1455, 1462 (10th Cir.1995), but where, as here, the parties dispute whether a valid and enforceable arbitration agreement exists, that presumption is non-existent. *Riley Mfg. Co. v. Anchor Glass Container Corp.*, 157 F.3d 775, 779 (10th Cir.1998).

The FAA generally applies to employment contracts, as arbitration agreements do not contravene the policies of federal statutes which give employees specific protection against discrimination. *See Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 119, 122-23 (2001). Thus the plaintiff can be required to arbitrate federal claims for employment discrimination if he has contracted to do so. *See Armijo v. Prudential Ins. Co. of America*, 72 F.3d 793, 797 (10th Cir.1995) (citing *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 35 (1991)). Here, the question whether the parties agreed to arbitrate a dispute is an issue for judicial determination, because the parties have not clearly and unmistakably provided otherwise. *See AT & T Technologies, Inc. v. Communication Workers of Am.*, 475 U.S. 643, 649 (1986).

A party can be made to arbitrate only those disputes which he has agreed to

submit to arbitration. *AT & T Techs.*, 475 U.S. at 648; *see also Avedon Eng'g., Inc. v. Seatex,* 126 F.3d 1279, 1283 (10th Cir.1997). "A court may compel arbitration of a particular dispute ... only when satisfied that the 'making' of the agreement to arbitrate is not at issue." *National American Ins. Co. v. SCOR Reinsurance Co.*, 362 F.3d 1288, 1290 (10th Cir. 2004) quoting *Spahr v. Secco*, 330 F.3d 1266, 1270 (10th Cir. 2003). In determining whether a dispute is arbitrable, the court uses a burden-shifting framework similar to that used in deciding summary judgment motions.

> A defendant bears the initial burden of showing that an arbitration agreement is valid. *SmartText Corp. v. Interland, Inc.*, 296 F.Supp.2d 1257, 1262-63 (D.Kan. 2003) (citations omitted); *Phox v. Atriums Mgmt. Co.*, 230 F.Supp.2d 1279, 1282 (D.Kan. 2002). Once the defendant has met this burden, the plaintiff must show that a genuine issue of fact remains about the agreement. *SmartText Corp.*, 296 F.Supp.2d at 1263; *Phox*, 230 F.Supp.2d at 1282. "Just as in summary judgment proceedings, a party cannot avoid ... arbitration by generally denying the facts upon which the right to arbitration rests...." *Tinder v. Pinkerton Sec.*, 305 F.3d 728, 735 (7th Cir.2002).

*Hildebrand v. Par Network, Inc.*, 2009 WL 4508578, 1 -2 (D.Kan. 2009). To demonstrate a genuine issue of material fact as to the making of the agreement to arbitrate, the facts "must be identified by reference to an affidavit, a deposition transcript, or a specific exhibit incorporated therein." *Adams v. Am. Guar. & Liab. Ins. Co.*, 233 F.3d 1242, 1246 (10th Cir. 2000). In deciding whether the non-movant has identified a genuine issue of material fact for trial, "the evidence of the non-movant is to be believed and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). If the plaintiff demonstrates a genuine issue of material fact, then a trial on this issue is required. *Avedon Eng'g*, 126 F.3d at 1283; 9 U.S.C. § 4. However, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v.*

7

*Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986) (citations omitted).

**Analysis**

Generally, state law principles of contract formation govern the determination whether a valid arbitration agreement exists. *Hardin v. First Cash Fin. Servs., Inc.*, 465 F.3d 470, 475 (10th Cir. 2006). The court thus looks to Kansas' choice of law rules regarding contracts. No claim is made that the agreements containing the arbitration clauses contain a choice of law clause, or that the parties otherwise made an effective choice of law. Kansas courts generally apply the Restatement (First) of Conflict of Laws § 332 (1934), and the doctrine of lex loci contractus, thus the law of the state where the contract is made governs. *In re K.M.H.*, 285 Kan. 53, 60 (2007), *cert. denied*, 129 S.Ct. 36 (2008). Under Kansas law, a contract is made where the last act necessary for its formation occurs. *Id.* Here, the offer, acceptance, and consideration, if any, all occurred in Kansas, and no party has shown that any law other than that of the State of Kansas should apply. *See id.*, at 61 (noting default to law of forum state in contract disputes). Accordingly, the court applies the substantive law of the State of Kansas to determine whether the parties entered into a valid agreement to arbitrate.

Under Kansas law, the question whether the parties have created a binding contract depends on their intent and is a question of fact. *Reimer v. Waldinger Corp.*, 265 Kan. 212, 214 (1998). In order for parties to form a binding contract, there must be a meeting of the minds as to all essential terms. *Sidwell Oil & Gas Co. v. Loyd*, 230 Kan. 77, 79 (1981). However, the parties' intentions are "generously construed as to issues of arbitrability." *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985).

Defendant has met its burden to show prima facie evidence of an enforceable arbitration agreement through the record quoted above, which demonstrates defendant's adoption and publication of the Original and Amended DRPs. "There is a distinct difference between a policy which a given employer might adopt and sincerely intend to follow, ... and a binding contractual duty." *Berry v. Gen. Motors Corp.*, 838 F.Supp. 1479, 1492 (D.Kan.1993). Here, the language contained in the documents quoted above demonstrates an intention to form a binding agreement to arbitrate. Specifically, this is done by statements such as: "After the effective date, employees must use the DRP to resolve workplace disputes"; "By continuing ... employment, ... current employees agree ... that all covered claims are subject to the DRP and to accept an arbitrator's (or arbitrators') award as the final, binding, and exclusive determination of all covered claims"; and by repeatedly referring to the DRP as an "agreement" containing a binding arbitration provision, or a "written agreement for the resolution of employment disputes." Dk. 5, Exh. 2, p. 3.

A party who seeks to enforce an arbitration agreement must provide evidence that the party to be bound had notice that continued employment would constitute agreement to the terms of the arbitration document. *See Kerr v. Dillard Store Services, Inc.*, No. 07-2604-KHV, 2009 WL 2525582, *4 (D. Kan. Aug. 17, 2009). This too, the defendant has done, as the record quoted above demonstrates. Importantly, the plaintiff does not contend that he was unaware of the terms of the Original or Amended DRP. Nor does the plaintiff contend that he did not receive actual notice of defendant's position that his continued employment constituted acceptance of the terms of the arbitration agreement. "When, as in the instant case, the employee is made aware of

9

company policy, which is a part of the terms of the employment contract, the employee will be bound by those terms." *Sweet v. Stormont Vail Reg. Medical Ctr.*, 231 Kan. 604, 611, 647 P.2d 1274, 1280 (1982).

Instead, the plaintiff contends solely that he never agreed to be bound by either DRP, and that he was never "informed and/or instructed that [he] could no longer be a Hallmark employee unless [he] accepted and acquiesced in and to the Dispute Resolution Program." Dk. 8, Exh. A (plaintiff's affidavit). Neither party asserts that the plaintiff ever signed any DRP agreement. Instead, defendant adopted the DRP and distributed it to its employees without requesting or requiring their signatures. It is "not necessary that there be a simple integrated writing or that a party sign the writing containing the arbitration clause. All that is required is that the arbitration provision be in writing." *Medical Dev. Corp. v. Industrial Molding Corp.*, 479 F.2d 345, 348 (10th Cir. 1973) (citations omitted). Because a party to a contract may evidence his intent to be bound by methods other than a signature, the fact that the plaintiff did not expressly agree to be bound by the DRP is immaterial.

The sole issue is whether the plaintiff's continued employment is sufficient to constitute acceptance or consideration, even absent his express agreement to the DRP. Plaintiff is correct that a contract must be supported by consideration in order to be enforceable. *See Varney Bus. Servs. v. Pottroff*, 275 Kan. 20, 59 P.3d 1003, 1014 (2002) (citations omitted). "A promise is without consideration when the promise is given by one party to another without anything being bargained for and given in exchange for it." *Id.* (citation omitted). But "[u]nder Kansas law, there is a rebuttable presumption that contracts are supported by consideration. *Uarco, Inc. v. Eastland*, 584 F.Supp. 1259,

1262 (D.Kan.1984) (citing *Ferraro v. Fink*, 191 Kan. 53, 379 P.2d 266 (1963))." *Heatron, Inc. v. Shackelford*, 898 F.Supp. 1491, 1499 (D.Kan. 1995).

"[I]n Kansas continued employment can be consideration in certain circumstances, and the question of consideration is a question of fact." *Herr v. Heiman*, 75 F.3d 1509, 1515 (10th Cir. 1996) citing *Puritan-Bennett Corp. v. Richter*, 8 Kan.App.2d 311, 657 P.2d 589 (1983) (finding continued employment after execution of a restrictive covenant was sufficient consideration to support a restrictive covenant executed after the initial employment contract began). *See Wichita Clinic, P.A. v. Louis*, 39 Kan.App.2d 848, 854, 185 P.3d 946, 952 (Kan.App. 2008) ("continued employment by the Clinic during a 13-year period constitutes sufficient consideration to support the restrictive covenant.")

Cases establish that continued employment may suffice as adequate consideration for arbitration provisions. Continued employment was found to be sufficient consideration in *Kenney v. Hallmark Cards, Inc.*, 2009 WL 102682, 3 (D.Kan. 2009), which examined and upheld the very same Amended DRP as is at issue here. The plaintiff was bound by the Amended DRP the plaintiff's assertion that she was never told about the DRP due to her absence from work. In a similar case, continued employment of an at-will employee provided sufficient consideration to create a binding agreement to arbitrate where: (1) the language of the arbitration policy purported to create a contractual duty; (2) plaintiff had actual notice of the policy; and (3) the obligation to arbitrate was mutual. *Durkin v. Cigna Property & Casualty Corp.*, 942 F.Supp. 481, 488 (D.Kan. 1996). Those same elements are met here. Similarly, in *Felling v. Hobby Lobby, Inc.*, 2005 WL 928641 (D.Kan. 2005), the court found the

employer's promise to continue to employ an at-will employee to be valid consideration for the employee's promise to abide by a newly-enacted arbitration agreement which stated that the employee's "continued employment ... will constitute your acceptance of this agreement to arbitrate." *Id.*

In *Hardin*, the defendant adopted an arbitration program which permitted an employee's signature, but also informed employees that their continued employment would constitute acceptance of the terms of the arbitration agreement, even absent a signature. There, an employee refused to sign the arbitration agreement and expressly notified the defendant of her refusal to consent to it, unambiguously stating her intent not to be bound by it. Nonetheless, the Tenth Circuit found that the employee's continued employment after the date certain "manifested her assent to [the defendant's] outstanding offer to modify the terms of her at-will employment." *Hardin v. First Cash Fin. Servs.*, 465 F.3d 470, 476 (10th Cir. 2006). Although the Tenth Circuit applied Oklahoma law, that substantive law does not appear to differ in significant respect from the law of Kansas.

Similar to the arbitration policies in *Durkin*, *Felling*, and *Hardin*, and identical to the arbitration policy in *Kenney*, the Amended DRP makes clear that a contractual duty of arbitration was created. Plaintiff's conduct in the present case of continuing his employment after the effective date of the Amended DRP manifested his intent to be bound by the terms of the Amended DRP, constituting both acceptance and consideration. *See Winfrey v. Bridgestone/Firestone, Inc.*, 205 F.3d 1349 (unpublished table decision), 1999 WL 1295310, at *1 (8th Cir.1999) ("[W]here an at-will employee ... retains employment with knowledge of new or changed conditions, ... retention of

employment constitute[s] acceptance of the offer of a unilateral contract; by continuing to stay on the job, although free to leave, [the employee] supplie[s] the necessary consideration for the offer, and agree[s] to be bound by the Plan's mandatory arbitration provision." (internal citation and quotation omitted)). *See generally Robinson v. Muller*, 181 Kan. 150, 153, 309 P.2d 651, 654 (1957) (Under Kansas law, "[t]he existence of an employer-employee relationship ... ultimately depends upon the existence of express or implied contractual relations between the parties."); *Durkin*, 942 F.Supp. at 487 (Under Kansas law, "an at-will employee does work under an employment contract, by which, at its most basic level, the employee promises to do a certain job and the employer promises payment therefor; the failure to fulfill either promise constitutes a breach of contract.")

Alternatively, the court finds that the mutual promises to arbitrate, binding both parties, serve as sufficient consideration. *See Felling v. Hobby Lobby, Inc.*, 2005 WL 928641 (D.Kan. 2005); *Perkins v. Rent-A-Center, Inc.*, No. 04-2019-GTV, 2004 WL 1047919, at *3 (D.Kan. May 5, 2004), citing *Michalski v. Circuit City Stores, Inc.*, 177 F.3d 634, 637 (7th Cir. 1999) (finding sufficient consideration from the fact that the plaintiff promised to arbitrate all future disputes in exchange for the company's promise to employ her, where both parties were bound by the terms of the agreement). No claim is made that the contract lacks mutuality, is illusory, or fails in other respects.

IT IS THEREFORE ORDERED that defendant's motion to stay the case and compel arbitration (Doc. 4) is granted.

IT IS FURTHER ORDERED that the parties shall proceed to arbitration in accordance with the provisions of the Amended DRP.

Dated this 4th day of March, 2010, at Topeka, Kansas.

                                              s/ Sam A. Crow
                                              Sam A. Crow, U.S. District Senior Judge